IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MONTRAIL RUSSELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:18-cv-1068-WKW-GMB |
| ) | [WO] |
| STATE OF ALABAMA DEPARTMENT ) | |
| OF MENTAL HEALTH, and, ) | |
| TAYLOR HARDIN, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is the *pro se* complaint of Plaintiff Montrail Russell. Doc. 1. The court construes the complaint as a Motion for Preliminary Injunction. *See* Doc. 1 at 2. Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law. Doc. 3. For the reasons stated below, the Magistrate Judge RECOMMENDS that the Motion for Preliminary Injunction (Doc. 1) be DENIED.

**I. FACTUAL BACKGROUND**

Russell asserts claims against the Taylor Hardin Secure Medical Facility located in Tuscaloosa, Alabama, where he resides. Doc. 1. He also asserts claims against the Alabama Department of Mental Health located in Montgomery, Alabama. Doc. 1. The facts that follow are those alleged in the complaint.

Janitors at Taylor Hardin clean the bathrooms, the residents' rooms, and the day space area only once per week. Doc. 1 at 3. While the janitors clean on Thursdays, the

residents of Taylor Hardin must wait in the gymnasium. Doc. 1 at 3. If the residents are sleepy, they are forced to sleep on the dirty gym floor without a pillow or blanket. Doc. 1 at 3. The gym floor is dirty and the gym bathroom is always filthy because the gym is never cleaned. Doc. 1 at 3. The sinks in the bathroom gym are old and out-of-date. Doc. 1 at 3. The sinks have low water pressure and constantly get clogged so that residents are forced to wash their hands in dirty water. Doc. 1 at 3. Only three of the six sinks work, which is insufficient for serving Taylor Hardin's 45 residents. Doc. 1 at 3. Despite the residents' complaints, Taylor Hardin refuses to address the issue. Doc. 1 at 3. The trashcans rarely are emptied. Doc. 1 at 6.

The towels provided to the residents are poorly washed, and never bleached. Doc. 1 at 3. Residents must use the same towels for their bodies and their faces. Doc. 1 at 3. The bedsheets are cleaned only once a week, when the residents are forced to go to the gym. Doc. 1 at 5. Socks, t-shirts, and underwear are never replaced. Doc. 1 at 5.

The residents at Taylor Hardin have the right to qualified treatment by highly trained professionals. Doc. 1 at 4. Yet the employees receive only two weeks of limited training. Doc. 1 at 4. Taylor Hardin is grossly understaffed. Doc. 1 at 4. The facility has not hired the adequate amount of staff for security purposes. Doc. 1 at 4. The staff are sleep deprived because they are forced to work double shifts. Doc. 1 at 4. The staff fall asleep on the job on a daily basis. Doc. 1 at 4.

Residents are permitted only a limited amount of recreational activity. Doc. 1 at 4. They can either watch television or play cards, dominoes, or chess. Doc. 1 at 4. The television speakers do not work properly. Doc. 1 at 4. Residents are seldom allowed

outside and can only use the recreational yard for 15 to 20 minutes occasionally. Doc. 1 at 4. They are never permitted to use the big yard, and instead spend most of their time trapped inside. Doc. 1 at 5. They have access to only one phone, which serves 45 people. Doc. 1 at 7.

Items at the commissary are grossly overpriced. For example, two batteries cost three dollars. Doc. 1 at 5. Residents can only go to the canteen twice per week. Doc. 1 at 5. They are limited to purchasing either two food items, or one food item and one drink item. Doc. 1 at 5. The food served in the kitchen is always cold. Doc. 1 at 5. The coffee, tea, and juice is watered down and never sweetened. Doc. 1 at 7.

When residents inform the staff that their current pain medication is ineffective, they receive no relief. Doc. 1 at 6. Instead, they are forced to continue taking the same medication. Doc. 1 at 6. And they are not allowed a second opinion from another doctor unless they are willing to pay for it, regardless of their ability to pay. Doc. 1 at 6. Some of the nurses enjoy abusing their authority by giving the residents unnecessary shots. Doc. 1 at 6. Residents often are punished for infractions committed by someone else. Doc. 1 at 7. The Advocate Department is not helpful. Doc. 1 at 7. Occasionally the employees in the Department listen to complaints and inform the residents that their complaints will be reported. Doc. 1 at 7.

Russell fears that he and the other residents of Taylor Hardin will be subjected to retaliation when it is discovered that they want to challenge Defendants in court. Doc. 1 at 2. He also fears that attempts will be made to tamper with their mail and legal paperwork. Doc. 1 at 2. The price of legal documents has already increased to a $1.50 per page. Doc.

1 at 5. Residents are not allowed to receive copies of their medical records. Doc. 1 at 6. Patient-doctor confidentially rights are being violated. Doc. 1 at 7. Russell seeks a preliminary injunction to prevent any retaliation. Doc. 1 at 2.

## II.  DISCUSSION

### A.   Preliminary Injunctive Relief

The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). This court many grant a preliminary injunction only if Plaintiff demonstrates each of the following prerequisites: (1) a substantial likelihood of success on the merits; (2) irreparable injury will occur absent issuance of the injunction; (3) the threatened injury outweighs the potential damage the requested injunction may cause the non-moving parties; and (4) the injunction would not be adverse to the public interest. *Id.*; *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983); *Shatel Corp. v. Mao Ta Lumber & Yacht Corp.*, 697 F.2d 1352, 1354–55 (11th Cir. 1983). "In this Circuit, [a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to the four prerequisites." *McDonald's*, 147 F.3d at 1306; *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp. Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (holding that a preliminary injunction is issued only when "drastic relief" is necessary); *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975) (holding that the grant of a preliminary injunction "is the exception rather than the rule," and the movant must clearly carry the burden of persuasion). The moving party's failure to demonstrate a "substantial likelihood

of success on the merits" may defeat the party's claim, regardless of the party's ability to establish any other elements. *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994); *see also Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (noting that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper"). "The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001) (internal citation omitted).

Russell seeks an injunction to prevent Taylor Hardin from retaliating against him and others for initiating this legal action. Doc. 1 at 1. Russell is not entitled to the drastic relief provided by a preliminary injunction, which would require proof of (1) a substantial likelihood of success on the merits, (2) that irreparable injury will occur absent issuance of an injunction, (3) that the threatened injury outweighs the potential damage the requested injunction may cause Defendants, or (4) that the injunction would not be adverse to the public interest. *See McDonald's Corp.*, 147 F.3d at 1306. Russell's request for preliminary injunctive relief is devoid of any allegation that Russell will suffer irreparable harm if an injunction is not issued, which requires a showing of harm that "cannot be redressed by a legal or an equitable remedy" through the ordinary course of litigation. *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3rd. Cir. 1989) ("The preliminary injunction must be the only way of protecting the plaintiff from harm"). Moreover, Russell's request for injunctive relief is entirely speculative. *See Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (holding that "a party has standing to seek

injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury"). The record before the court does not warrant a preliminary injunction at this time.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that the Motion for Preliminary Injunction (Doc. 1) be DENIED. Russell is DIRECTED to file any objections to the report and recommendation **no later than May 9, 2019**. Any objections filed must specifically identify the findings in the Magistrate Judge's report and recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. Russell is advised that this report and recommendation is not a final order of the court and, therefore, is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the report and recommendation and shall bar the party from attacking on appeal factual findings in the report and recommendation accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 18th day of April, 2019.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE

6

7